Plff. proved the trespass, and that the locus in quo being a certain marsh in Redlion hundred, had descended from Patrick Porter, and had been in the several and undisturbed possession of plff. and those under whom he claimed from 1801-2. or 3 to 1821, since which time the possession had been disturbed by Reybold by repeated claims of ownership. The marsh was divided by a natural sluice; that part on the north part of the sluice was in possession of Jones in 1801-2 or 3, at the witness' earliest recollection, and never claimed by Rice, who held the part on the south side. The Jones lot passed through several conveyances to Reybold: the Rice lot descended to plff's. wife. *Page 147 
The deft. set up a tenacy in common in the locus in quo; went into a history of the Porter family, and gave in evidence sundry deeds forming a chain of title in him to one-half the land which he insisted had never been divided. These deeds all spoke of it as undivided property. He exhibited a deed from David Porter to Evan Rice, reciting Patrick Porter's will, and conveying an undivided one-third of a moiety of land and marsh, 22d December 1802. Deed from Rice and wife to Purnel Veach for one-third of a moiety, 1st July 1809. Proceedings and deed of sheriff to Archibald Alexander for one-half of a moiety the share of John Jones, 20th December 1811; deed of Alexander to Veach, 9th June 1814; from Veach to Thos. M. Forman and from Forman to Reybold, 1st Jan. 1820.
In reply the plff. gave in evidence the record of certain articles of agreement between Purnel Veach of the one part, and Evan Rice on the other part, dividing as he contended these lands, 1st July 1809. The articles fixed on certain lines as the division between the upland, and bound the parties to execute mutual deeds of release according to those lines. They agreed to divide the marsh, but no lines were mentioned. The terms were "The said Evan Rice and Purnel Veach, each agrees to release to each other" the marsh lots, sothat each shall hold their parts in severalty; and they bound themselves in a penalty to execute such releases.
In answer to this the deft. called William P. Veach, the son of Purnel Veach, who proved that he never knew of any actual division of the marsh in conformity with this agreement.
Richard H. Bayard, to the jury, for plaintiff.
Trespass quare clausum fregit. The deft. claims the land and "has put us on showing title. Patrick Porter died seized of a farm and twenty-one acres of marsh in Redlion hundred. His estate went under this will to his daughters Janet and Mary Porter. Janet married Robert Porter; Mary married Whitehead Jones. Porter and wife and Jones and wife were each, therefore, entitled to one-half of this marsh. Robert Porter and Whitehead Jones divided the marsh, as we contend, some thirty years ago or more, Jones taking that part which lay to the north of the sluice, and which has always been called the Jones lot; Porter taking the south side, which shortly went into the possession of Evan Rice, and has since been known as the Rice lot. Whitehead Jones and wife had issue, John Jones and Mary Jones. Mary Jones married Evan Rice. Rice and wife therefore, had one-half of the Jones lot. Robert Porter and wife had issue Mary Porter and David Porter, who were each entitled to one-half of the south or Rice lot. Evan Rice's second wife was Mary Porter, and he thus became entitled to Mary's one-half of the Rice lot, having before one-half of the Jones lot in right of his first wife Mary Jones: which last he conveyed to Purnel Veach, and from him it came to Reybold. Evan Rice bought David Porter's one-half of the Rice lot, which gave to him the whole of this lot; and Reybold becoming possessed of John Jones' share and the remaining half of the Jones' lot, is the owner of the whole of that lot. The title to the Rice lot, or locus in quo, descended from Rice and wife to plff's. wife, their only surviving child.
From the long several holding of this marsh, we have a right to *Page 148 
conclude that Whitehead Jones and Robert Porter made a division; which, at that day, could have been done as well by parol and livery of seizin as by writing. But there is a subsequent actual partition by deed between Purnel Veach and Evan Rice. We contend that this is an actual division, and not merely an agreement to divide. They mutually contract and agree to release to each other by a line "which it is agreed shall be the dividing line between the parties." I agree to release is the same as I release, and the same form of language is used in introducing the penalty. In confirmation whereof, we agree to bind ourselves, c. The last clause is only a covenant for further assurance. Deeds must be construed according to the intention of the parties, and here they were in the contemporaneous holding and enjoyment of the property as released to each other. Washington Rice proves that his brother held in severalty from 1801-2 or 3. This deed was in 1809. Why was this instrument recorded if not a conveyance? The parties thus showed their intent: a mere agreement to convey is not entitled to be recorded. Doctor Alexander's deed to Veach, bounds the Jones lot to the south by Rice's land, which shows the holding at that time; and moreover this is an estoppel, for deft. claims through Veach and Alexander. If this were a tenancy in common, Evan Rice would have been entitled to a share of the Jones marsh which he never, claimed, and which Jones and his successors held without disturbance. That being held in severalty, is strong proof that this was so held. And if there were any doubt about a severance of this tenancy in common, the jury would presume it after such a lapse of time. We have proved an actual several holding by Evan Rice nineteen or twenty years ago, and he no doubt so held long previously. 3 Bac. Ab. 709; Noy'sRep. 14; Cowper 217. Actual ouster what?
 Rogers, for defendant, to the jury.
The deed of David Porter to Evan Rice conveys only a third of a moiety of this land. He was entitled to one-half of the moiety, and therefore he is a tenant in common with the plff. for a portion of the Rice lot supposing a division was made, and he ought as such tenant in common to have been joined in this action, for such tenant can't sue separately for a trespass to their common property. But was this marsh even divided? A plot of all the Redlion marsh made under an act of assembly in 1805 lays down this marsh as the undivided property of Jones and Rice. The testimony in relation to what is now assumed as the dividing line is, that about twenty-five or twenty-six years ago the Redlion bank broke, and made this sluice. As a dividing line it could not have existed more than twenty-five or twenty-six years. And for ten years past, it is admitted that the possession has been disturbed. Next the deed of Rice and wife to Veach shows that no division had been made. It conveys "an undivided third part of the moiety." John Jones' share was executed and sold as "two-thirds of an undivided part of the land." Finally, the agreement between Evan Rice and Purnel Veach, which has been so much relied on by the plff. shows that there had been no division theretofore. It agrees upon a dividing line for the upland but no line is fixed on as a division of the marsh. They bind themselves to release to each other their shares of marsh, so that each *Page 149 
should hold in severalty: does not this prove that it was then held in common? Then does this article effect that partition? No, it was merely an agreement to divide; an executory contract. Who were the parties to this instrument? Evan Rice was then the husband of Mary Jones. Mary Porter his first wife was dead leaving issue; that issue, and not Rice, were entitled to one-fourth. David Porter had and interest still in it, and Rice had only one-third of a moiety, and that as a tenant by the curtesy. How then could Evan Rice make a partition with Veach? As to its being a conveyance because it is recorded, any deed in relation to lands may be recorded, whether it conveys land or not. It has been called a release, and has been said to sever the tenancy in common by way of release, but one tenant in common cannot release to his co-tenant. Whatever may be its effect it is not a release.
J. M. Clayton, on the same side. The plff. claims that there has been a partition of this marsh. Look on the plot and see what is the equal division which they say has been made. Coming down to the sluice, their dividing line, it will be seen that we have got about four or five acres of the marsh, and they twenty-ones acres and one hundred and ten perches. We say it is conclusive, that no such division ever was made. But what is the testimony in relation to the holding. All the deeds state this to be undivided property. Rice's deed. Alexander's and Forman's. Mr. Bayard was mistaken in relation to Alexander's deed. No such boundary as he supposed, is mentioned in that deed. But this part of the case is shut up by the articles of agreement between Rice and Veach. Here the tenancy in common is expressly admitted; and the question is whether that deed had the effect to sever it in relation to the marsh. As to the upland, we have no objection to admit that it did; it distinctly fixes and describes a dividing line, and the holding has been in accordance with that division; but we deny that the parties intended or did any thing more by that deed than to agree to divide. In relation to the marsh, the deed says "The said Evan Rice and Purnel Veach, each agrees to release to each other the marsh lots, so that each shall hold their parts in severalty;" and they bound themselves in a penalty, to execute such releases. Nothing is clearer than that this is but an executory agreement to provide, with covenants to convey or release. And if Rice and Veach had actually released, it would not have severed the tenancy. Tenants in common cannot release to each other. Then if this tenancy has not been severed plff. must fail. Bac. Ab. 694,v. 3, Wils. Edit. Co. Litt. 193, b. Cruise tit. 20. One tenant in common cannot bring trespass against another, for both are seized per my et per tout. 2 Selw. N. P. 1023. An ouster cannot be presumed in this case. No such presumption has ever been allowed in less than thirty-six years. The case in Cowper
narrows it down to that time. An actual ouster cannot be pretended; for the plff. has himself proved that he continues in possession. If two tenants in common be, and one destroy the property held in common, the other shall have an action of trespass. Co. Litt. s. 323, 199 b. This proceeds on the destruction of the thing, and it explains the case cited from Noy.
(Note.) See 1 Chit Plead. 182; 2 Saund. Evid. 458, (896.) *Page 150 
Cites Co. Litt. 1996; 3 Wils. 119, and 12 Mod.
517. The references do not appear to sustain the text.
Read, jun., in reply.
Went into the whole ground, but his remarks are in substance reported in his colleague's argument. He noticed Mr. Rogers' objection that David Porter was shown to be a co-tenant with the plff. and ought to have been joined, but the court stopt him on this point, and said that this matter ought to have been pleaded in abatement.
Mr. Read admitted that the deed or agreement between Rice and Veach could not operate as a release, but he insisted that it was matter of evidence confirmatory of the previous several holding, which he insisted was proved. We have proved that the marsh was in two lots; the Rice lot and the Jones lot, then belonging to Veach. They had been so held for at least nineteen years. In 1809 Rice and Veach executed a deed dividing the upland and fixing on the dividing line, and agreeing to release to each other the marsh lots, evidently referring to the lots as they had theretofore been held. There was no necessity for inserting in the deed a more particular description of the dividing line, for it referred to two distinct lots, long held and known as such, and they agree mutually to release to each other all interest in these lots. And it is not important whether this shall operate by way of release, confirmation or otherwise, so that it effect a severance, or acknowledges a previous several holding of the land.
Traced the descent minutely from Patrick Porter and the intermediate conveyances, and showed that the title to one-half of the marsh was in the plff., and to the residue in deft. He then stated the question to be whether there had ever been a partition, either actual, or such a holding as would amount in law to a partition. It has been thrown out in the debate that a partition by parol might even now be sufficient, but we apprehend that since the statute of frauds a partition to be valid must be in writing. The construction that the court put upon the deed between Rice and Veach is that it did effect a partition in relation to the upland, for it marked and defined the holdings; but there is nothing in the deed itself from which you could collect what portion or part of the marsh either of the contracting parties was thenceforth to hold in severalty, nor did it distinctly refer to previous holdings, so as to fix which lot should be. Rice's and which Veach's. The terms too seem to imply the contemplation of a subsequent division. We are therefore of opinion that this deed amounts only to an agreement to divide the marsh, and is not an actual division. The jury will perceive the importance of this point; for, if the possession has not been severed, the plff. and deft. are tenants in common, and this action cannot be sustained; for one tenant in common cannot maintain trespass against his co-tenant, except under peculiar circumstances, as where there has been a destruction of the thing held in common, or after a recovery in ejectment, c.
But the plff. considers that he has proved a several holding long enough back to satisfy you that there was a partition between Porter and Jones, and he has proved a several holding by Evan Rice *Page 151 
and his descendants for eighteen, nineteen or twenty years, and for ten years since, a disturbed possession. We leave the evidence on this subject with the jury, remarking that where land descending from a common ancestor is held a part by one, and another part by another heir, without either interfering with the other for so long a period as twenty years, it would be strong evidence of a partition.
 Verdict for plaintiff.